## John G. Stober, Appellee, v. George W. Ehrhart, Appellant.

1. GUARANTY—*sufficiency of evidence in action on guaranty of payment of notes sold.* In an action upon an instrument in writing in the form of a guaranty by defendant of the payment of all notes sold by defendant to plaintiff, evidence examined and *held* to show that the purported sales of notes were not in fact sales but were made to secure loans of money.

2. USURY—*when transactions usurious.* Where the discount rate upon notes involved in transactions purporting to be sales, but which were in fact loans, was greater than the legal rate of interest, the transactions were usurious and it was error to render judgment in favor of plaintiff for the full amount of the principal of and interest on the notes.

3. USURY—*when usurious interest paid cannot be recovered back.* Usury only taints the single transaction in which it occurs, and usurious interest, when voluntarily paid, cannot be recovered back if the transaction is entirely closed and none of the original debt remains unpaid.

4. USURY—*right of debtor when portion of usurious debt remains unpaid.* While any portion of a usurious debt remains unpaid, the debtor has a right to insist that only the balance of the principal remaining after application on the principal of all payments, whether of principal or interest, be allowed to the creditor.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed January 4, 1922.

REDMON, HOGAN & REDMON, for appellant.

ANDRUS, TRUTTER & CROW, JESSE L. DECK and W. THOMAS COLEMAN, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an appeal from a judgment for $14,000 and costs in favor of appellee against appellant.

Appellee alleged in his declaration that on April 18,

1916, appellant executed and delivered to him the following instrument: "Decatur, Illinois, April, 18th, 1916. I hereby agree to guarantee the payment of all notes I sell to J. G. Stober, with interest at the rate of seven per cent per annum from their date, and that said notes will be taken care of by me within two years from this date, if not paid before. George W. Ehrhart"; that thereafter appellant sold to him fourteen notes which had not been paid and that settlement therefor had not been made by appellant.

Appellant filed pleas of the general issue, payment, want of consideration and a special plea setting up, in substance, that the purported sales of the notes were not in fact sales, but were made to secure loans of money at usurious rates of interest.

Appellee had been doing business with appellant a great many years. Their course of dealing was essentially the same during all that time. Appellant would transfer and deliver a number of notes to appellee. Settlement would be made sometimes every month, sometimes every three or four months, and sometimes every six months. At these settlements, all or part of the notes appellee had previously received would be taken up by the appellant and appellee would be given credit for them. Appellee would be charged with what money he had been paid since the last settlement and notes would be given him for the balance. Sometimes some of the same notes that had been taken up at these settlements would be retransferred to appellee and sometimes new notes in whole or in part would be given to him to make up the balance.

Frequently the amount of the notes taken up and the money advanced to appellee since the last settlement either exceeded or was less than the amount of the notes retransferred, which difference was adjusted by carrying the difference forward to the next settlement, or by paying the difference in cash or by check.

Appellant would be charged 7 per cent interest up to this accounting time on any money that had been advanced to him since the last settlement. The price of the notes to appellee was arrived at by computing 7 per cent of the face value, adding the same to the face value, and then discounting the total 14 per cent.

At these accounting periods, defendant would give plaintiff a statement showing the notes taken up, money advanced by cash or check and notes transferred to appellee. Twenty-six of these statements appear in the record.

On April 18, 1916, appellant gave appellee the writing upon which suit was brought. Appellee testified that he would not buy any more notes from appellant unless he gave him some guarantee and thereupon appellant gave him this guarantee. He also testified he had had two guaranties before that, but that they had run out. This testimony was not disputed.

Of the fourteen notes in question, one was given in 1908, one in '09, two in '10, five in '11, one in '12, one in '13, one in '14 and two in '17. Two of them were payable in three months after date, ten in six months after date, and two in one year after date. Several of them had been secured by chattel mortgage long since run out, but no one seems to have made any effort to foreclose the mortgages. One of these notes appears from the evidence to have been paid to appellant within three months of its date.

Appellee testified that some of these notes he had had in his possession eight or ten years; that the way they did business was that whatever notes appellee had in the bank he would take down once or twice a year to appellant's office and he would sell the notes back to appellant; that appellant's bookkeeper would compute the interest on the notes, make out a statement of the account between the parties and that appellee would then buy the notes back from appellant

and that several of the notes in question had been many times thus sold and resold; that he never had any business dealings with any of the makers of the notes and did not know any of them.

It appears from the evidence that when any payments of principal or interest were made upon the notes they were made to appellant. It also appears that but little of the interest was paid upon the notes by the makers and that the greater part of the indorsements of the payments of interest on the notes were indorsements of interest paid by appellant to appellee.

This case is in every material legal aspect analogous to the cases of *Mercantile Trust Co. of Illinois v. Kastor*, 273 Ill. 332; *Dorothy v. Commonwealth Commercial Co.*, 278 Ill. 629, and *American Credit & Trust Co. v. New Era Chandelier Co.*, 208 Ill. App. 181, the only difference being that in those cases accounts were claimed to have been sold and, in the present case, notes.

In *Cobe v. Guyer*, 237 Ill. 568, it was said: "No form which can be given to a contract, no device by which a new form is given to an old transaction tainted with usury, and no mere substitution of securities will avail to cut off the defense of usury."

In *Mercantile Trust Co. of Illinois v. Kastor, supra,* the court said: "The test which determines whether the real transaction between the parties was a loan or a sale is the intention of the parties, and their intention is to be ascertained from the whole transaction, including the conduct of the parties as well as their written agreement. * * * The form of the transaction is not material. No device intended to disguise the real character of the transaction can avail to defeat the statute. Calling the transaction a sale of accounts does not alter the fact that the transaction is merely an advancement of money, to be repaid by the borrower with a rate of interest greater than that allowed by law."

In *Dorothy v. Commonwealth Commercial Co., supra,* where the contract on its face was for a sale of accounts and all the parties testified that there was no secret understanding as to the nature of the transaction between the Maynard Company and the Commonwealth Company, but that the written contracts between the companies correctly set forth the intention of the parties, and that the terms and provisions of those written contracts were strictly adhered to in all transactions between the companies with reference to accounts and piano contracts, the court said "The conduct of the parties to the contracts indicates conclusively that they regarded the transaction as loans and not as sales."

That the transactions in this case were not sales, but loans, is evidenced by the testimony of appellee, who when asked on direct examination, "How did you happen to get that guarantee?" replied, "because I wanted to get my money and he would not pay anything any more."

Holding these transactions to be loans and not sales, it follows as a necessary conclusion that they were tainted with usury and that the court erred in rendering judgment for the full amount of principal and interest of the notes.

We are asked to enter final judgment here. This we cannot do. Usury only taints the single transaction in which it occurs, and usurious interest, when voluntarily paid, cannot be recovered back when the transaction is entirely closed and none of the original debt remains unpaid, yet while any portion of the original debt remains unpaid, appellant has a right to insist that only the balance of the principal, in each particular case, if any, remaining after the application upon the principal of all payments, whether of principal or interest, be allowed to appellee by way of recovery.

This record is in such condition that it is impossible for us to check up each transaction and ascertain just

what amount, if anything, appellee is entitled to recover.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*